# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TNHC Arizona LLC, et al.,<br><br>                    Plaintiffs,<br>v.<br>Peter-Lacke USA LLC,<br><br>                    Defendant. | Case No.:  21-CV-1017 W (MSB)<br><br>**ORDER GRANTING REQUEST FOR JUDICIAL NOTICE [DOC. 6-1] AND DENYING MOTION TO DISMISS [DOC. 6]** |

    Pending before the Court is Defendant Peter-Lacke's motion to dismiss Plaintiffs' First Amended Complaint (FAC).  Along with Defendant's motion, it has filed an unopposed request for judicial notice.  Plaintiffs oppose the motion.

    The Court decides the matter on the papers submitted and without oral argument. See Civ. L.R. 7.1(d)(1).  For the reasons stated below, the Court **GRANTS** the request for judicial notice [Doc. 6-1] and **DENIES** the motion to dismiss [Doc. 6].

//

//

## I. BACKGROUND

This lawsuit arises out of a product-liability dispute between Plaintiffs TNHC Arizona LLC and TNHC Mountain Shadows LLC ("TNHC"), and Defendant Peter-Lacke USA LLC ("Lacke"). TNHC is the developer of a residential project located in Paradise Valley, Arizona. (*First Amended Complaint* ("FAC") [Doc. 5] ¶¶ 10, 11.) As part of the development, some time from 2017 through 2018 TNHC "purchased wood-free exterior siding with factory applied coatings, stains, and sealants" (the "Pre-Finished Siding"), which contains UV sealant, for the exterior of the homes. (*Id.* ¶ 12.) TNHC alleges Lacke, along with other entities, entered a joint venture to "design, manufacture, supply, and distribute" the Pre-Finished Siding. (*Id.* ¶ 14.) TNHC further alleges Lacke "designed, developed, manufactured, suppled and sold [the] UVE sealant" for the express purpose of incorporating it into the Pre-Finished Siding. (*Id.* ¶ 16.)

Unfortunately, several batches of the Pre-Finished Siding that TNHC purchased for the residential project began showing signs of premature degradation. (*FAC* ¶ 27.) This was after TNHC had already complained about one batch that failed to perform as intended and began cupping and warping. (*Id.* ¶ 26.)

As a result of TNHC's complaints, on September 19, 2019, Lacke and the other entities involved in the design, manufacture and supply of the Pre-Finished Siding inspected the condition of the product that was installed and informed TNHC that they needed more time to complete their evaluation. (*FAC* ¶ 27.) TNHC relied on these representations in deciding not to immediately file a lawsuit and entering into a tolling agreement while the parties attempted to resolve the issue. (*Id.* ¶¶ 29, 30.) During the negotiations, Lacke "held itself out as the manufacturer, designer, and supplier" of the UV sealant. (*Id.* ¶ 32.)

Ultimately, the negotiations failed and TNHC filed a lawsuit against Lacke and the other entities in Arizona in the Maricopa County Superior Court (the "Arizona Litigation"). Lacke moved to dismiss the complaint for lack of personal jurisdiction. On February 9, 2021, the Superior Court dismissed Lacke for lack of personal jurisdiction.

On April 1, 2021, TNHC filed suit against Lacke in the San Diego Superior Court. (*Compl.* [Doc. 1-2].) On May 27, 2021, Lacke timely removed the action to this Court. (*See Notice of Removal* [Doc. 1] ¶ 2.)

On June 21, 2021, TNHC filed the FAC, which asserts three causes of action for: (1) Strict Liability; (2) Negligence; and (3) Declaratory Relief. (*See FAC*.) TNHC alleges that Lacke "specifically designed and manufactured the [UV] sealant to withstand high temperatures and high levels of direct sun exposure" and that the UV sealant reached TNHC without substantial change. (*Id.* ¶¶ 37, 39.) Furthermore, TNHC contends the UV sealant was not fit for its intended use as it "has caused and will continue to cause degradation, deterioration, and/or liquification in direct sunlight and/or high temperatures" and the defects were present when the UV sealant left the factory. (*Id.* ¶¶ 40, 41.) Finally, TNHC alleges Lacke "failed to perform the necessary tests … to ensure that [the UV sealant] performs as intended to protect materials from damage from sunlight and high temperatures." (*Id.* ¶ 57.)

Lacke has now filed a motion to dismiss the FAC. (*P&A* [Doc. 6].) TNHC opposes the motion. (*Opp'n* [Doc. 7].)

II.  **LEGAL STANDARD**

Federal Rule of Civil Procedure 12(b)(6) allows a defendant to file a motion to dismiss for failing "to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). A motion to dismiss under Rule 12(b)(6) tests the complaint's sufficiency. See N. Star Int'l v. Ariz. Corp. Comm'n., 720 F.2d 578, 581 (9th Cir. 1983). A complaint may be dismissed as a matter of law either for lack of a cognizable legal theory or for insufficient facts under a cognizable theory. Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530, 534 (9th Cir. 1984). Additionally, in evaluating the motion, the court must assume the truth of all factual allegations and must "construe them in light most favorable to the nonmoving party." Gompper v. VISX, Inc., 298 F.3d 893, 895 (9th Cir. 2002).

To survive a motion to dismiss, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Supreme Court has interpreted this rule to mean that "[f]actual allegations must be enough to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 554, 555 (2007). The allegations in the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570).

Well-pled allegations in the complaint are assumed true, but a court is not required to accept legal conclusions couched as facts, unwarranted deductions, or unreasonable inferences. Papasan v. Allain, 478 U.S. 265, 286 (1986); Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001).

### III. REQUEST FOR JUDICIAL NOTICE

Lacke requests judicial notice of certain filings in the Arizona Litigation. (*See RJN* [Doc. 6-1].) Specifically, it requests judicial notice of: (1) Travis Nuzman's Declaration filed in Support of TNHC's Opposition to Lacke's Motion to Dismiss; (2) the Arizona Complaint; (3) John Bilson's Declaration filed in Support of Lacke's Motion to Dismiss; and (4) the February 9, 2021 Order granting Lacke's motion to dismiss. (*Id.* 1:1–11.)

Federal Rule of Evidence 201 permits a court to take judicial notice of an adjudicative fact if it is "not subject to reasonable dispute." Fed. R. Evid. 201(b). A fact is "not subject to reasonable dispute" if it is "generally known," or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(1)-(2). Under this rule, a court may "take judicial notice of matters of public record without converting a motion to dismiss into a motion for summary judgment," but it "cannot take judicial notice of disputed facts contained in such public records." Khoja v. Orexigen Therapeutics, Inc., 899 F.3d 988, 999 (9th Cir. 2018).

Under Rule 201, judicial notice of documents filed in other court proceedings is appropriate. See NuCal Food, Inc. v. Quality Egg LLC, 887 F.Supp.2d 977, 984 (E.D.

Cal. 2012) ("Courts have consistently held that courts may take judicial notice of documents filed in other court proceedings."). Accordingly, the Court will grant the request for judicial notice.

### IV. DISCUSSION

#### A. Strict Liability Claim

Under California law, to prove a claim for strict products liability the plaintiff must show: "(1) the product is placed on the market; (2) there is knowledge that it will be used without inspection for defect; (3) the product proves to be defective; and (4) the defect causes injury…" from a reasonably foreseeable use of the product. Scott v. Metabolife Internat., Inc., 115 Cal. App. 4th 404, 415 (2004). To prove the third prong, plaintiffs can rely on a manufacturing defect, design defect, or a failure to warn. Anderson v. Owens-Corning Fiberglas Corp., 53 Cal. 3d 987, 995 (1991). Accordingly, to survive a motion to dismiss on a strict liability claim the plaintiff must plausibly plead each of the four prongs and one of the defectiveness theories.

Here, Lacke argues that "TNHC's strict liability claim must be dismissed because it fails to allege a manufacturing defect, a design defect, a warning defect, or causation." (*P&A* 8:20–22.) The Court will address these two prongs separately.

#### 1. Product Defect

Generally, a "manufacturing or production defect is readily identifiable because a defective product is one that differs from the manufacturer's intended result or from other ostensibly identical units of the same product line." Barker v. Lull Engineering Co., 20 Cal. 3d 413, 429 (1978). To successfully pursue a manufacturing defect claim, a plaintiff "must identify/explain how the product either deviated from the manufacturer's intended result/design or how the product deviated from other seemingly identical models; therefore, a bare allegation that the product had 'a manufacturing defect' is an insufficient legal conclusion." Zetz v. Bos. Sci. Corp., 398 F. Supp. 3d 700, 708 (E.D. Cal. 2019)

(citing Lucas v. City of Visalia, 726 F. Supp. 2d 1149, 1155 (E.D. Cal. 2010)).  "[A]n inference of defect [cannot be drawn] solely from the fact of an accident…."  Hinckley v. La Mesa R.V. Center, Inc., 158 Cal. App. 3d 630, 642 (Cal. Ct. App. 1984).  However, a plaintiff can still prove "a manufacturing defect using only circumstantial evidence." Notmeyer v. Stryker Corp., 502 F. Supp. 2d 1051, 1059 (N.D. Cal. 2007) (citing Hinckley, 158 Cal. App. 3d at 643). "A manufacturing defect exists when an item is produced in a substandard condition." McCabe v. Am. Honda Motor Co., 100 Cal. App. 4th 1111, 1120 (2002).

Lacke argues TNHC failed to state a claim for manufacturing defect because TNHC failed to identify how the UV sealant was defectively manufactured, how it differs from its intended design, or what specific manufacturing defect the sealant suffered from. (*P&A* 9:10–20.)  The Court disagrees.

The FAC alleges that "Defendants specifically designed and manufactured the Lacke Sealant to withstand high temperatures and high levels of direct sun exposure" and that when exposed to such conditions the sealant "has caused and will continue to cause degradation, deterioration, and/or liquification …, and is not fit for its intended use as a sealant to protect the wood-free boards from the elements."  (*FAC* ¶¶ 37, 40.)  TNHC also alleges that initially "one batch" of the Pre-Finished Siding, which contained the Lacke UV sealant, "failed to perform as intended and began cupping and warping" and "[t]hereafter, several other batches … appeared to be prematurely degrading." (*Id.* ¶¶ 26, 27.)  From this allegation, it is reasonable to infer that some of the "other batches" did not fail to perform.  As such, TNHC's claim that the UV sealant had a manufacturing defect is facially plausible.  The fact that certain batches of ostensibly identical units of the same product line appeared to be defective while others did not—combined with TNHC's allegation that the sealant was intended for use in Arizona-like climates and failed to meet that intention—allows the court to draw the reasonable inference that Lacke is liable for a manufacturing defect and provides Lacke with the required notice in defending this

suit.[1]  Lacke's proposed level of specificity is not required at the pleading stage.  E.g., Izzetov v. Tesla Inc., 2020 U.S. Dist. LEXIS 60261, at *10 (N.D. Cal. Apr. 6, 2020) ("Plaintiffs, however, need not specifically allege that the manufacture of the Tesla at issue deviated from the design specification or from the manufacture of other Teslas.")  For these reasons, the Court finds the FAC sufficiently alleges the product was defective.

### 2. Causation

In the product liability context, "[a] manufacturer, distributor, or retailer is liable in tort if a defect in the … product causes injury while the product is being used in a reasonably foreseeable way."  Soule v. General Motors Corp., 8 Cal. 4th 548, 560 (1994).  "As with other tort claims, the plaintiff must show the defect in the product was a legal or proximate cause of the plaintiff's injury."  Shih v. Starbucks Corp., 53 Cal. App. 5th 1063, 1067 (2020).  Proximate cause has two aspects; one is cause in fact and the other focuses on public policy considerations.  Id. at 1068 (citation and quotation omitted).  As Lacke focuses on the cause in fact aspect and fails to address the public policy considerations, the Court will focus solely on the cause in fact aspect of the FAC.  (See P&A 13:5–14:9.)

To prove cause in fact, a "plaintiff must prove that the defective products supplied by the defendant were a substantial factor in bringing about his or her injury."  Rutherford v. Owens-Illinois, Inc., 16 Cal. 4th 953, 968 (1997).  "Ordinarily, proximate cause is a question of fact which cannot be decided as a matter of law from the allegations of a complaint. … Nevertheless, where the facts are such that the only reasonable conclusion is an absence of causation, the question is one of law, not of fact."  State Dep't of State Hosps. v. Superior Court, 61 Cal. 4th 339, 353 (2015) (quoting

---

[1] While both parties have briefed the design defect and failure to warn theories, the Court need not address these alternative theories at the motion to dismiss stage since the FAC pleads a single strict products liability cause of action and can proceed on any of the three theories.  (See FAC 8:1–2.)

Weissich v. County of Marin, 224 Cal. App. 3d 1069, 1084 (1990)) (internal quotations omitted).

Here, Lacke contends TNHC has failed to establish causation for the following reasons: (1) it offers no support for the proposition that the sealant caused the damage; (2) "the damage could have been caused instead by the substrate provided by Westech, the stain used by Resysta, or the manner in which Resysta built the Resysta Siding and/or applied the sealant and stain[;]"[2] and (3) "[a]bsent factual allegations as to the … specific context of the facts underlying this case, it is just as likely to infer that the Sealant performed without issue and any number of variable or events … are responsible for the alleged harm." (*P&A* 13:18–21; *Reply* 3:7–11.) The Court disagrees with each argument.

The second contention can be disposed of rather quickly. "[I]t is not necessary for a plaintiff to establish the negligence of the defendant as the proximate cause of injury with absolute certainty *so as to exclude every other possible cause of a plaintiff's [injury]* …." Cooper v. Takeda Pharm. Am., Inc., 239 Cal. App. 4th 555, 578 (2015) (emphasis in original); see also Bettencourt v. Hennessy Indus., Inc., 205 Cal. App. 4th 1103, 1123 (2012) ("That the conduct of other entities may also have contributed to plaintiffs' injuries would not preclude a finding that [Defendant's] product was a substantial factor in causing those injuries."); Bates v. John Deere Co., 148 Cal. App. 3d 40, 50 (1983) ("All a plaintiff need show to establish proximate or legal cause is that a defendant's conduct in some way substantially contributed to the injury and that the circumstances are such that make it just to hold a defendant responsible for the consequences of the accident.") Therefore, the fact that the damage may have also been caused by another party does not necessarily mean that Lacke did not substantially contribute to the damage.

---

[2] Westech and Resysta were two of the "other entities" with whom Lacke entered the joint venture to design, manufacture, supply and distribute the Pre-Finished Siding. (*FAC* ¶ 14.)

As to Lacke's other contentions, they essentially challenge whether TNHC has plausibly alleged causation in the FAC. As an option to prove cause in fact, California has adopted the substantial factor standard which "is a relatively broad [standard], requiring only that the contribution of the individual cause be more than negligible or theoretical." Rutherford v. Owens-Illinois, Inc., 16 Cal. 4th 953, 978 (1997).

Here, TNHC has alleged that Lacke played an integral role in the overall production of the sealant, that Lacke specifically designed and manufactured the sealant to withstand high temperatures and high levels of direct sunlight, that Lacke expected the sealant to reach TNHC without substantial change—and it did—, that when TNHC used the product as intended it caused and will continue to cause several types of damage, and that the sealant was the cause or one of the causes of the damage. (*FAC* ¶¶ 37, 39, 40, 41, 44.) This is more than a negligible or theoretical contribution, especially since the damage sustained in the final product was due to UV exposure and the UV sealant was intended to protect the whole product against this. The causation element of the strict liability claim is therefore plausibly plead in this action. See Tellez-Cordova v. Campbell-Hausfeld/Scott Fetzger Co., 129 Cal. App. 4th 577, 587 (2004) ("[Plaintiffs'] theory is that [Defendant's] products, when used as intended—indeed, when used in the only way they could be used—did cause the injury, and they pled facts in support of that theory. We cannot say on demurrer that [Defendant's] products did not, as a matter of law, cause the injury.")

Accordingly, the Court finds the FAC sufficiently pleads causation.[3]

---

[3] In the present motion, Lacke cites to the "Chrysler Declaration." (*P&A* 5:21–22.) However, that declaration was attached to Lacke's motion to dismiss the original Complaint and was not attached to the present motion to dismiss. Therefore, the declaration is not properly before this Court. More importantly, the Court may not consider the truth of the statements in the declaration on a motion to dismiss, and the Court declines to turn the motion to dismiss into a motion for summary judgment.

### B. Negligence Claim

The main difference between strict and negligent product liability claims is that in a negligent product liability suit the focus is on the conduct of the manufacturer not whether the product itself was defective. Brown v. Superior Court, 44 Cal. 3d 1049, 1056 (1988). As every first-year law student painstakingly knows, a plaintiff seeking to recover under a negligence theory must prove duty, breach, causation, and damages resulting from the breach. Merrill v. Navegar, Inc., 26 Cal. 4th 465, 477 (2001). Under a negligent product liability theory, "a plaintiff must also prove 'an additional element, namely, that the defect in the product was due to negligence of the defendant.'" Id. at 479 (citation omitted). Here, Lacke argues TNHC failed to plausibly plead every element except damages. (*P&A* 14:13–16:10.) The Court takes up each element in order.

Lacke contends that the "Chrysler Declaration" shows that Lacke neither designed nor manufactured the sealant, and therefore, could not owe TNHC a duty. (*P&A* 14:15–19.) As mentioned above in footnote 3, the "Chrysler Declaration" is not properly before the Court and is not proper to consider at the pleading stage.

Lacke further contends that even if it had designed or manufactured the sealant, a "manufacturer's duty to consumers is limited to its warranty obligations absent either an affirmative misrepresentation or a safety issue." Opperman v. Path, Inc., 84 F. Supp. 3d 962, 985 (N.D. Cal. 2015) (*P&A* 14:20–22.) This is only true in the limited instance of failure to disclose cases. Id. at 983. "[U]nder established California law, a manufacturer … owes a duty of care to foreseeable users of its product." Bettencourt, 205 Cal. App. 4th at 1118. Lacke seems to concede as much since it uses that exact quote in its Reply. (*Reply* 7:9–11.) Lacke's sole objection, therefore, seems to be with the assertion that TNHC made-up a duty. (*Reply* 7:7.)

TNHC alleged that "Defendants were under a duty to Plaintiffs, the end user of the product, to manufacture, design, and/or supply the Lacke Sealant with reasonable care, in a good and workmanlike manner, free from defects, and fit for its intended use." (*FAC* ¶ 54.) The difference here is one of degree, not of kind. Based on the allegations in the

FAC, the Court finds that TNHC has plausibly alleged that Lacke owed them a duty of care as foreseeable users of its product.

Furthermore, Lacke contends the FAC merely contains "threadbare allegations, without factual support," which "fail to allege breach." (*P&A* 15:7–8.) However, the Plaintiffs have clearly plead more than threadbare allegations:

> 55.   Defendants were negligent and breached their duty of reasonable care by failing to properly design, develop, manufacture, and supply the Lacke Sealant in that the Lacke Sealant is defective and is not suitable for its intended use to protect the board substrate, stain, and adjacent building components from and against UV radiation and sun exposure and/or a sealant which degrades and liquifies in sunlight and damages the board substrate, stain, and adjacent building components.
>
> 56.   Defendants were negligent and breached their duty of reasonable care owed to Plaintiffs by designing, developing, manufacturing, and supplying the Lacke Sealant in a deficient and substandard manner resulting in the addition of contaminants to or improper chemical components in the Lacke Sealant, negligently directing the mixing and application of the Lacke Sealant to the unfinished siding product in that Defendants failed to properly mix, properly apply, and/or identify and/or apply the proper thickness of the Lacke Sealant to the unfinished siding product, and placing the defective product into the stream of commerce.
>
> 57.   On information and belief, Defendants failed to perform the necessary tests, or failed to perform the necessary tests in a reasonable and workmanlike manner, of the Lacke Sealant to ensure that it performs as intended to protect material from damage from sunlight and high temperatures, and/or was suitable for use on exterior siding and/or for use in climates with high temperature and high sun exposure, the latter of which was the sole or substantial purpose of the joint venture and/or enterprise, and/or common plan between Lacke, Resysta, RSW, Westech, Westlake, and DOES 1 through 100.

(*FAC* ¶¶ 55, 56, 57.) These allegations have sufficiently provided Lacke with notice regarding the possible breaches of duty that TNHC is pursuing and can hardly be considered "threadbare." Moreover, these allegations simultaneously plead the additional element, "that the defect in the product was due to negligence

of the defendant," since these negligent acts, which must be taken as true at the pleading stage, plausibly lead to the failure of the UV sealant to work as intended. Merrill, 26 Cal. 4th at 479.

Finally, Lacke's contentions regarding the causation element in the negligence cause of action mimic its contentions regarding the causation element in the strict liability cause of action. Lacke contends TNHC fails to explain how the sealant is a substantial factor, "as opposed to, for example, the substrate provided by Westech, the stain used by Resysta by itself or the manner in which Resysta built the Resysta Siding and/or applied the sealant and stain. Absent such factual support, [Plaintiffs'] conclusory allegations must be dismissed." (*P&A* 16:4–7.) As this line of argument is merely repetitive of Lacke's second contention regarding causation in the strict liability claim, the Court finds that TNHC has plausibly plead causation in the negligence claim for the same reasons discussed in Part IV.A.2, *supra*. Namely, the fact that the damage may have also been caused by another party does not necessarily mean that Lacke did not substantially contribute to that damage. see Bettencourt, 205 Cal. App. 4th at 1123 ("That the conduct of other entities may also have contributed to plaintiffs' injuries would not preclude a finding that [Defendant's] product was a substantial factor in causing those injuries.") The FAC contains numerous allegations, which taken as true, plausibly plead causation between Lacke's product and the damages alleged. (*FAC* ¶¶ 37, 39, 40, 41, 44); see also Tellez-Cordova, 129 Cal. App. 4th at 587 ("[Plaintiffs'] theory is that [Defendant's] products, when used as intended— indeed, when used in the only way they could be used—did cause the injury, and they pled facts in support of that theory. We cannot say on demurrer that [Defendant's] products did not, as a matter of law, cause the injury.")

Accordingly, the Court finds the FAC sufficiently alleges the negligence cause of action.

C.  **Declaratory Relief**

Both parties agree that "declaratory relief is not a separate cause of action; rather it is simply a remedy." DPR Constr. v. Shire Regenerative Med., Inc., 204 F. Supp. 3d 1118, 1132 (S.D. Cal. 2016).  Thus, since the underlying claims upon which this remedy may be premised were not dismissed, the Court will not dismiss the declaratory relief remedy.  See Farmer v. Countrywide Fin. Corp., 2009 U.S. Dist. LEXIS 49553, at *20 (C.D. Cal. May 18, 2009) (citing Principal Life Ins. Co. v. Robinson, 394 F.3d 665, 669 (9th Cir. 2005)) ("For declaratory relief to be appropriate, then, there must be an actual controversy relating to the legal rights and duties of the parties.")

V.  **CONCLUSION & ORDER**

For the foregoing reasons, the Court **GRANTS** the request for judicial notice [Doc. 6-1] and **DENIES** the motion to dismiss [Doc. 6].

Dated:  February 16, 2022

Hon. Thomas J. Whelan
United States District Judge